**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRAY JIBRIL MURRAY,                )
           **Plaintiff**                )    **C.A. No. 08-264 Erie**
                               )
           **v.**                )    **District Judge McLaughlin**
                               )    **Magistrate Judge Baxter**
PAUL A. ENNIS, et al.,                )
           **Defendants.**                )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss Amended Complaint [Document # 31] be granted in part and denied in part.

## II.     REPORT

### A.     Procedural History

On or about September 2, 2008, Plaintiff Bray Jibril Murray, an individual formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Named as Defendants in Plaintiff's original complaint are:  Paul Ennis, Program Manager at SCI-Forest ("Ennis"); Michael C. Barone, Superintendent at SCI-Forest ("Barone"); Edward J. Wojcik, Deputy Superintendent at SCI-Forest ("Wojcik"); and Major James A. Reed, a corrections officer at SCI-Forest ("Reed").  Plaintiff subsequently filed an amended complaint on March 16, 2009, in which he added the following Defendants, all of whom are also employed at SCI-Forest: Lieutenant Bensel ("Bensel"); Cindy Hays, Activity Manager ("Hays"); Ben Marzullo, Activity Manager ("Marzullo"); Activity Specialist Ford ("Ford")' Specialist Morley ("Morley"); Lieutenant M.L. Nevling ("Nevling"); Captain Ireland ("Ireland"); Lieutenant W. Gill ("Gill");

---

[1]

Plaintiff is presently incarcerated at SCI-Mahanoy in Frackville, Pennsylvania.

Sergeant Nicholson ("Nicholson"); Mail Supervisor D.A. Woodard ("Woodard"); Bill C. Dombrowski, Unit Manager ("B. Dombrowski"); Sharon M. Dombrowski, School Principal ("S. Dombrowski"); Kurt L. Granlund, Deputy Superintendent ("Granlund"); Paula Toski, Inmate Accountant ("Toski"); Laura Banta, Hearing Examiner ("Banta"); Timothy I. Mark, Chief Hearing Examiner ("Mark"); Dorina Varner, Chief Grievance Coordinator ("Varner"); Major M.D. Overmyer ("Overmyer"); and Captain M.C. Repko ("Repko").

Plaintiff alleges that Defendants retaliated against him for filing grievances, in violation of his First Amendment rights, and violated his Fourteenth Amendment equal protection rights, by: (i) placing him in SCI-Forest's restricted housing unit ("RHU") under administrative custody status; (ii) rejecting and returning to sender non-legal correspondence sent to him by friends, without notifying him and giving him an opportunity to protest; (iii) denying him law library; and (iv) finding him guilty of an allegedly false misconduct. (Amended Complaint at pp. 2-4). In addition, Plaintiff claims that denying him access to the law library violated his constitutional right to access the courts. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and monetary damages.

On May 21, 2009, Defendants filed a motion to dismiss amended complaint [Document # 31], arguing, *inter alia*, that Plaintiff has failed to state a claim upon which relief may be granted. Attached to Defendants' motion are a number of exhibits consisting primarily of Plaintiff's grievance and misconduct records, upon which Defendants rely in seeking to dismiss Plaintiff's claims. [Document # 31, Exhibits A-M]. Plaintiff has since filed a brief in opposition to Defendants' motion, responding fully to Defendants' arguments and the documents attached to Defendants' motion. [Document # 37]. This matter is now ripe for consideration.[2]

---

[2]

Fed.R.Civ.P. Rule 12(d) provides that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Here, Defendants have presented and rely upon a number of exhibits attached to their motion , to which Plaintiff has responded fully in his opposition brief. Although Plaintiff's arguments in his brief are not made under oath, the Court will treat them as sworn declarations for purposes of deciding Defendants' motion. In this way, the Court will review and consider Defendants' exhibits as part of its determination of Defendants' motion, and the motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.     Relevant Factual History**[3]

In June 2008, Plaintiff filed four grievances against one or more members of SCI-Forest's Activity Department:  (i) Grievance No. 232487, claiming that Defendant Ford failed to place him on call out for an inmate chess league tournament; (ii) Grievance No. 232515, claiming that Activity Department staff members blackballed him from becoming a member of a newly-formed Inmate General Welfare Fund Committee; (iii) Grievance No. 232923, claiming that  Activity Department staff members failed to place him on call out for an advanced cardio program; and (iv) Grievance # 232513, claiming that Defendant Morley denied him access to a forty and over exercise program. (Amended Complaint at p. 2; Document # 31, Exhibits A-D). Defendant Ennis was assigned to respond to three of the four grievances and denied each, noting specifically in response to Grievance No. 232923 that "inmate Murray is advised that false allegations against a staff member of any type are taken seriously and will be dealt with accordingly, if they continue." (Amended Complaint at p. 2; Document # 31, Exhibit C at p. 2).

On June 30, 2008, Defendant Ennis ordered Defendants Newling and Repko to place Plaintiff in the RHU under administrative custody, because he was a danger to himself and others. (Amended Complaint at p. 2; Exhibit C-3 attached to original Complaint).  The decision to place Plaintiff in the RHU was upheld by the Program Review Committee ("PRC"), which consisted of Defendants Ennis, Wojcik, and Reed, who found that Plaintiff had been exhibiting "aggressive behavior" toward staff members. (Amended Complaint at p. 2; Exhibit D-4 attached to original Complaint).  As a result, Plaintiff was continued on administrative custody. (Id.).  On appeal, Defendant Barone affirmed the PRC's decision and warned Plaintiff that "should you choose to continue your argumentative behavior with staff, you will remain in the RHU on a long term basis." (Amended Complaint at p. 2; Exhibit E-5 attached to original Complaint). Plaintiff's subsequent appeal to final review was denied by Defendant Mark. (Amended Complaint at p. 2; Exhibit E-6 attached to original Complaint).

---

[3]

The factual history recited herein has been gleaned from Plaintiff's Amended Complaint [Document # 27], and is accepted as true for purposes of deciding Defendants' motion.

On October 18, 2008, Plaintiff filed Grievance No. 247199 against Defendant Woodard and SCI-Forest's mail room staff, charging mail tampering, unlawful monitoring of mail, and denial of correspondence privileges, because his non-legal correspondence from friends and family had been rejected and returned to sender without his knowledge. (Amended Complaint at p. 3; Document # 31, Exhibit H). In particular, Plaintiff stated that his sister informed him that SCI-Forest's mail room returned letters from three female friends because they were considered third party mail. (Document # 31, Exhibit H at p. 8). Plaintiff claimed that DOC policy required him to be notified of the rejection and the mail be held for at least seven business days to allow him to protest. (Id.). Defendant Toski wrote an initial response denying the grievance, indicating that "DOC policy does not permit third party correspondence," and "does not state the inmate must be advised of mail that is returned to sender." (Id.). Plaintiff's appeal of Defendant Toski's response was denied by Defendant Barone. (Id.). On final review, Defendant Varner upheld Plaintiff's appeal and overturned the responses provided at the institutional level, agreeing that Plaintiff should have been notified of the rejection of correspondence, and the correspondence should have been held for at least seven working days pending appeal. Nevertheless, Defendant Varner found that Plaintiff had failed to provide any proof that staff had deliberately tampered with his mail or that he had been harmed in any way by the staff's "mistake in not notifying [him] of the violation." Thus, Plaintiff was refused the relief he requested. (Id.).

On October 19, 2008, Plaintiff filed Grievance No. 247200 against Defendants Nicholson and Gill, claiming that they denied him law library in retaliation for his filing of an earlier grievance. (Amended Complaint at p. 4). Defendant Ireland responded to Plaintiff's Grievance by filing a misconduct against him for lying to an employee. (Id.). Defendant Banta found Plaintiff guilty of the misconduct and sanctioned him to ninety days of disciplinary custody. (Id.). Plaintiff appealed this finding to the PRC, which consisted of Defendants S. Dombrowski, Overmyer, and Granlund, who affirmed Defendant Banta's decision. Plaintiff's subsequent appeals of Defendant Banta's decision were denied by Defendant Barone on December 2, 2008, and Defendant Mark on December 18, 2008. (Id.).

**C.      Standards of Review**

      **1.      Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 95 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.

\* \* \*

After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, ___ F.3d. ___, ___, 2009 WL 2501662, at \* 4-5 (3d Cir. Aug. 18, 2009).

## 2.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general

denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D.    Discussion

#### 1.    Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

_____In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[4]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[5]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged

---

[4]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[5]

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions.  "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case."  Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that one or more of the Defendants retaliated against him for utilizing the inmate grievance process by:  (i) placing him in the RHU under administrative custody; (ii) rejecting and returning to sender non-legal correspondence sent to him by friends, without notifying him and giving him an opportunity to protest; (iii) denying him access to the law library; and (iv) finding him guilty of an allegedly false misconduct and sanctioning him to disciplinary custody.

### a.     Constitutionally Protected Activity

Plaintiff has met the first prong of a retaliation claim, as filing grievances is clearly a protected form of free speech under the First Amendment.

### b.     Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action.  This means that Plaintiff's allegations must be sufficient to demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity.  Here, it is reasonable to presume that all of the adverse consequences Plaintiff allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity.  Thus, Plaintiff has satisfied the second prong of his retaliation claim.[6]

---

[6]

For purposes of their motion to dismiss, Defendants have assumed that Plaintiff has sufficiently alleged protected activity and adverse action. (Document # 2, Defendants' Brief, at p. 6).

9

### c.      Causal Connection

To satisfy the third prong of his retaliation claim, Plaintiff must allege a causal connection between his constitutionally protected activity of filing grievances, and the adverse actions he allegedly suffered at the hands of the Defendants.  Defendants contend that Plaintiff has failed to establish that his grievances were a substantial motivating factor in the challenged actions taken by Defendants.  However, Plaintiff's allegations, and copies of the grievances themselves, clearly indicate that the challenged actions took place within a short period of time after Plaintiff had filed one or more grievances.  Thus, Plaintiff has alleged, at least, a temporal proximity between the administrative remedies he filed and Defendants' alleged adverse actions to suggest a causal link sufficient to satisfy the third prong of his retaliation claim.  See Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged a *prima facie* case of retaliation.  Thus, it is Defendants' burden to prove, by a preponderance of the evidence, "that they would have made the same decision[s] absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.  In this regard, Defendants argue that the grievance and misconduct records attached to their motion confirm that they possessed legitimate penological reasons for each of their challenged actions.

### d.      Legitimate Penological Interests Cited by Defendants
### i.      Administrative Custody Claim

Plaintiff claims that Defendants Ennis, Barone, Wojcik, Reed, B. Dombrowski, Bensel, Nevling, Repko, and Ford placed him in the RHU "for an indeterminate period of time in retaliation for filing grievances against SCI-Forest staff." (Amended Complaint at p. 4).  Defendants counter that Plaintiff's grievance and misconduct records demonstrate that he was ultimately placed in the RHU under administrative custody due to reports of his aggressive behavior toward staff, which caused him to be considered a danger to himself or others.  In particular, Defendants note the following incidents that preceded Plaintiff's placement in the

10

RHU:  (i) in response to Grievance No. 232487, claiming that Plaintiff was left off the call out list for the inmate chess tournament, Defendant Ennis noted that Plaintiff's confrontation with Defendant Ford was "aggressive in nature and inappropriate towards a staff member" (Document # 31, Exhibit A at p. 3); (ii) in response to Grievance No. 323923, claiming that Plaintiff was not placed on the call out list for an advanced cardio program, Defendant Ennis determined that Plaintiff "acted in an aggressive manner, continued to argue when given an answer and is embellishing what happened during [his] exchange [with Defendant Ford]" (Document # 31, Exhibit C at p. 2); and (iii) on June 28, 2008, Defendant Marzullo observed Plaintiff playing basketball wearing a blue knee sleeve that was not authorized by the medical department.  As a result, Defendant Marzullo asked Plaintiff to remove the sleeve, at which point Plaintiff "became argumentative."  The sleeve was then confiscated and Plaintiff received a misconduct for possessing contraband, of which he was found guilty. (Document # 31, Exhibit E at pp. 6, 11).

Defendants note further that, two days after the misconduct written by Defendant Marzullo, Defendant Nevling issued an "other report" indicating that Plaintiff was "a danger to himself or others at SCI-Forest." (Document # 31, Exhibit F at p. 13).  It is apparent from the PRC's hearing decision that the "other report" arose from Plaintiff's confrontation with medical staff concerning the knee brace incident. (Document # 31, Exhibit F at p. 12).  While Plaintiff told the PRC that "he was not aggressive or forceful" and was "only tr[ying] to make his point," the PRC advised him that "his behavior toward the officers [was] why he [was] in the RHU." (Id.).  The PRC indicated further that "[s]everal staff members [were] reporting his aggressive behavior," and that he needed "to establish a period of positive behavior before being considered for general population again." (Id.).  In denying Plaintiff's appeal from the PRC's determination, Defendant Barone added that Plaintiff's "past history of disruptive behavior dictates that you remain under close supervision in population."  Defendant Barone also warned Plaintiff that "[s]hould you choose to continue your argumentative behavior with staff, you will remain in the RHU on a long term basis." (Id.).

Finally, Defendants point out that Plaintiff continued to object to his placement in the

RHU in a letter to the DOC's Deputy Superintendent Brian Wakefield, dated August 3, 2008, in which Plaintiff accused SCI-Forest of placing him under administrative custody in retaliation for his grievances against the activities department. (Document # 31, Exhibit G at pp. 1-3).  In response, Mr. Wakefield's staff assistant, Patti Stover, wrote a letter summarizing the reasons Plaintiff was placed in administrative custody:

> Please be advised that in June, you were aggressive in your actions towards Activities Specialist Morley in the Activities Department over several grievances you filed about a Chess League and playoffs, during which time you became verbally aggressive.  In addition, you were aggressive towards Lt. Bensel one afternoon while coming from yard and you were also in the med line area during an unauthorized time whereby you became verbally aggressive with staff.  Consequently, these series of events led to you being placed in AC status....

> In is the responsibility of the staff at SCI-Forest to ensure that proactive measures are taken for the safety of inmates and staff, in addition to you.  You were not placed in AC status simply due to filing grievances or your thoughts that Superintendent Barone ir harboring any grudges against you, but rather due to your own actions.

Document # 31, Exhibit G at p. 4).

Plaintiff attempts to counter the foregoing evidence by arguing that Defendants' "have yet to provide this court with any proof, to substantiate that at any time plaintiff was aggressive or threatening or dangerous." (Document #37 at p. 10).  In other words, Plaintiff argues that Defendants have failed to prove by a preponderance of evidence that he did, in fact, exhibit aggressive behavior that would justify placement in the RHU.  However, in the context of rebutting Plaintiff's retaliation claim, Defendants are not required to prove that Plaintiff actually engaged in aggressive behavior; only that their decision to place him in RHU was reasonably related to a legitimate penological interest – ie, prison security.  Here, multiple reports of Plaintiff's aggressive and/or argumentative behavior provided Defendants with an independent and legitimate penological reason to place him in administrative custody.  For this reason, summary judgment should be granted in favor of Defendants with regard to Plaintiff's retaliation claim concerning his placement in administrative custody.

### ii.    Rejection of Mail Claim

Plaintiff claims that Defendants Woodard, Toski, Granlund, and Varner rejected and returned non-legal mail sent to him by three female friends, without notifying him and giving him an opportunity to protest, "because of [his] litigious activities." (Amended Complaint at pp. 3, 5). In response, Defendants argue that DC-ADM 803, § 1.A.3(g) "prohibits inmates from corresponding with other inmates (or any prohibited party) directed through a third party." (Document # 32 at p. 17; Document # 31, Exhibit H at p. 1). Accordingly, Defendants essentially claim that they had a legitimate penological reason for rejecting and returning the mail.

However, as Defendant Verner acknowledged in her final review response to Plaintiff's grievance in this regard, DOC policy also requires that the inmate be notified when any correspondence is rejected, and that the correspondence "be held for at least seven working days after notification is sent, to permit reasonable opportunity to appeal the decision." (Document # 31, Exhibit H at p. 1). Defendant Varner conceded that this procedure was not followed with regard to the rejection and return of the correspondence at issue. While Defendant Varner proceeded to characterize this failure to follow policy as a "mistake," Plaintiff argues here that the challenged rejections occurred soon after he filed the instant lawsuit and that his "mail never been rejected/returned, for any reason, [since] he had arrived to SCI-Forest on July 5, 2005." (Document # 37, Plaintiff's opposition brief, at pp. 33-34). At the very least, this raises a genuine issue of material fact regarding Defendants' motives for rejecting Plaintiff's non-legal correspondence. Accordingly, Defendants' motion for summary judgment with regard to this claim should be denied.

### iii.    Denial of Law Library Claim

Plaintiff claims that Defendants Nicholson, Gill, Ireland, Banta, Granlund, Overmyer, S. Dombrowski, Barone, and Mark denied him access to the law library in retaliation for his having filed an earlier grievance (Grievance No. 244552) raising the same claim. (Amended Complaint at pp. 4-5). In particular, on October 19, 2008, Plaintiff filed Grievance No. 247200

13

claiming that he had submitted approximately ten request slips to use the law library since October 4, 2008, but had not been allowed access by Defendants Gill and Nicholson. (Document # 31, Exhibit K).

Rather than setting forth a legitimate penological reason for their alleged denial of Plaintiff's requests to use the law library, Defendants deny that Plaintiff was, in fact, denied access, as he claims. Specifically, Defendants point to Defendant Ireland's response to Plaintiff's grievance, in which he noted that, according to the law library log book, Plaintiff used the law library on October 4, 6, 8, and 18, 2008, for at least two hours each day. (Id. at p. 1). Based on this finding, Plaintiff's grievance was deemed frivolous, and Plaintiff was issued a misconduct by Defendant Ireland for lying to an employee. (Id.). Thus, it is apparently Defendants' position that, since the law library log book contradicts Plaintiff's claim that he was denied access to the law library, he cannot establish the basis for his retaliation claim, and they should be granted summary judgment accordingly.

Plaintiff, however, disputes the factual basis on which Defendants determined that he had been allowed access to the law library in October 2008. In particular, Plaintiff argues that the law library log book is unreliable and "can be manipulated to reflect whatever RHU staff wanted it to show." (Document # 37, Plaintiff's opposition brief, at p. 24). For this reason, Plaintiff states that "a specific procedure was adopted by RHU management to better track the ... frequency of RHU Law Library [use] and by whom, hence requiring that all RHU prisoners must sign and date previously submitted request slips on [the] day of actual use of [the] mini law library." (Document # 37, Plaintiff's opposition brief, at p. 24). Nevertheless, Plaintiff notes that none of the records produced by Defendants contain his signature verifying that he actually used the law library on the dates indicated in the log book.

At the very least, Plaintiff's arguments raise a genuine issue of material fact as to whether Plaintiff was, in fact, allowed access to the law library, as Defendants contend. Since Defendants have offered no evidence to prove that any denial of law library access was reasonably related to a legitimate penological interest, Defendants' motion for summary judgment in this regard should be denied.

14

### iv.    False Misconduct Claim

Plaintiff claims that the misconduct he received for lying to an employee about the denial of his access to the law library was issued in retaliation for his filing of grievances against SCI-Forest staff. (Amended Complaint at p. 5). In particular, Plaintiff alleges that he had previously filed more than ten grievances against Defendant Ireland, which would have given him "ample reason to want to respond to [Plaintiff's] grievance adversely; and did when he served plaintiff with misconduct for lying on his grievance no. 247200." (Document # 37, Plaintiff's opposition brief, at p. 26).

Defendants counter that Plaintiff's claim that he was denied access to the law library was refuted by the law library log, and, therefore, the misconduct had an independent basis and was reasonably related to the legitimate penological interest of maintaining order. However, the Court has already determined that there exists a genuine issue of material fact as to the accuracy of the law library log book. In addition, the individuals who cited the log book entries in support of the misconduct (in particular, Defendants Gill and Ireland), are the very people Plaintiff claims to have had motives to retaliate against him. Thus, Defendants are unable to establish by a preponderance of evidence that the challenged misconduct was issued for reasons reasonable related to a legitimate penological interest. Accordingly, Defendants' motion for summary judgment in this regard should be denied.

### 2.    Denial of Access to Courts Claim

Plaintiff's claim that Defendants Gill and Nicholson denied him access to the law library also raises a constitutional claim of denial of access to the courts.

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[7] The Lewis

---

[7]

The Lewis Court opined:

...*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines

Court held that, in order to state a claim for a denial of the right of access to the courts, a

plaintiff must show actual injury.  Id.   The plaintiff must show that, as a result of the

defendant's actions, he lost the ability to present an "arguably actionable claim" against the

validity of his sentence under direct or collateral appeal or a claim challenging his conditions of

confinement in a civil rights action.  Id. at 356.  The Third Circuit has further described the

*Lewis* holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show
> direct injury to their access to the courts.  The Court explained that an
> inmate could show, for example, that a complaint he prepared was
> dismissed for failure to satisfy some technical requirement which,
> because of deficiencies in the prison's legal assistance facilities, he could
> not have known.  Or [he could show] that he had suffered arguably
> actionable harm that he wanted to bring before the courts, but was so
> stymied by the inadequacies ... that he was unable even to file a
> complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under *Lewis*, this Court must determine whether Plaintiff has shown that he lost the

ability to present an "arguably actionable claim."  Here, Plaintiff claims that he was "deterred

from filing [an] appeal to the Pennsylvania Commonwealth Court." (Document # 37, Plaintiff's

opposition brief, at p. 30).  This appeal was referenced in a grievance Plaintiff filed on October

18, 2008, in which he indicated that a Forest County Judge had dismissed his "Section 1983"

complaint on October 16, 2008, and he only had 30 days to file an appeal to the Superior Court.

(Document # 31, Exhibit K).  Plaintiff complained in his grievance that Defendant Gill was

denying his access to the law library and, thus, hindering his ability to file an appeal; however,

the record shows that he, in fact, filed a timely appeal to the Superior Court on November 12,

---

> capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it
> requires to be provided are those that the inmates need in order to attack their sentences, directly or
> collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other
> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of
> conviction and incarceration.

Id. at 355.

2008. (Document # 31, Exhibit M).[8]  Thus, Plaintiff cannot show that he was unable to pursue an "arguably actionable claim."  Accordingly, summary judgment should be entered in favor of Defendants with regard to this claim.

### 3.      Fourteenth Amendment Equal Protection Claim

Plaintiff claims, in general terms, that each of the foregoing actions allegedly taken against him by Defendants violated his equal protection rights under the Fourteenth Amendment. (Amended Complain at pp. 4-5)  The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws."  U.S. Const. Amend. XIV, §1.  All persons "similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class."  Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).  Nonetheless, in certain cases the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co v. Commission of Webster Cty, 488 U.S. 336 (1989).  This is precisely the type of claim Plaintiff alleges here.

---

[8]

The state court appeal docket shows that Plaintiff's appeal was subsequently transferred from the Superior Court to the Commonwealth Court, thus accounting for Plaintiff's reference to a Commonwealth Court appeal in his opposition brief. (Document # 31, Exhibit M at p. 4).

In order to successfully plead a class of one equal protection claim, Plaintiff must claim that Defendants intentionally treated him differently from others similarly situated without a rational basis to do so.  North Pacifica LLC v. City of Pacifica, No. 05-16069, 2008 WL 2026085, at 7 (9th Cir. May 13, 2008).  The complained of conduct cannot be an accident or random act, but must be intentional, discriminatory treatment directed at just Plaintiff. Plaintiff's amended complaint does the opposite.  For his claim regarding return of third party mail,  Plaintiff alleges that, when he filed a grievance about the mail return, he received this response: "...mailroom inspectors would rejected(sic)/return all correspondence/mail consisting of letters with different hand writings and that no such law/policy existed that regulates and mandates [an] inmate must be notified of arrival of mail into the facility, before rejection/return of correspondence/mail, deemed as third party mail." (Document # 27, Amended Complaint at p. 3).  He makes no allegation that others were treated differently; in fact, the response he received demonstrates that all mail with different handwriting from third parties was returned. He makes no further allegations in his response brief that he was treated differently from other inmates.  Thus, this claim fails for not stating a cognizable cause of action under the Fowler standard.

Further, this Court has already found that Defendants had a legitimate penological reason for placing Plaintiff in administrative custody.  As a result, Plaintiff cannot prove that Defendants were without a rational basis for treating him differently than other inmates by this placement or the rules on limited library time while in this restrictive custody.  Specifically, Plaintiff makes no allegations that any other inmate in administrative custody was treated differently as to law library restrictions.  Thus, Plaintiff has failed to state an equal protection claim upon which relief may be granted with regard to his administrative custody claim as well. Accordingly, Defendants' motion to dismiss these equal protection claims should be granted as failing to state cognizable claims.

### 4.       Personal Involvement of Defendants

Finally, Defendants argue that a number of them should be dismissed from this case

18

because Plaintiff cannot prove that they were personally involved in the challenged actions. First, Defendants note that Plaintiff "accuses many defendants of constitutional violations based solely on their roles in the grievance and administrative appeal processes." In particular, Defendants argue that (i) Defendants Barone and Mark simply denied Plaintiff's grievance and misconduct appeals with regard to Plaintiff's administrative custody and law library claims; (ii) Defendants Toski, Granlund, and Varner "simply addressed [Plaintiff's] grievances and appeals relating to his returned mail issue;" and (iii) Defendants S. Dombrowski, Overmyer, and Granlund "are sued only because they denied Plaintiff's appeal of the misconduct issued by Defendant Ireland for lying to an employee." (Document # 32, Defendants' brief, at p. 23). Second, Defendants argue that Plaintiff has failed to assert any specific allegations against Defendants Hays, Morley and Marzullo and, therefore, said Defendants should be dismissed.

In response to the second argument, Plaintiff simply states that he "need not assert specific allegations against SCI-Forest employees who are not named as defendants in either the original or amended complaint, as in the case of Hays, Morley and Marzullo." (Document # 37, Plaintiff's opposition brief, at p. 47). It is apparent from this statement that Plaintiff never intended to name these individuals as Defendants in this case. Accordingly, Defendants Hays, Morley, and Marzullo should be dismissed from this case.

In response to Defendants' first argument, Plaintiff essentially concedes that Defendants Mark and Varner were not personally involved in the challenged actions and are "exempt" from liability. Thus, these Defendants should be dismissed from this case. Plaintiff, however, disputes Defendants' contention that Defendants Barone, Granlund, S. Dombrowski, and Overmyer were not personally involved because they "serve in the Facility Managerial capacities 'on a day to day basis,' at SCI-Forest as Superintendent, Deputy Superintendent, School Principal, and Major of the Guards, respectively..." (Document # 37, Plaintiff's opposition brief, at p. 43). As a result, Plaintiff argues that these Defendants "greatly influence everyday life within the prison." (Id. at p. 45). In addition, Plaintiff argues that "it is apparent from the boilerplate [grievance] responses of [Defendants Toski and Grunland] that they either exhibited nescience, apathy, or annoyance in a deliberate effort to frustrate and dissuade plaintiff

from pursuing redress,..." (Id. at p. 47).  The Court finds Plaintiff's arguments unavailing.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).  If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, Plaintiff has not alleged any personal involvement on the part of Defendants Barone, Toski, Grunland, S. Dombrowski, or Overmyer with regard to any of his claims in this case, apart from their responses to Plaintiff's grievances and/or misconducts.  Thus, at most, each Defendant was simply asked to investigate or rule on a grievance or misconduct after the incident giving rise to each had already occurred.  Such allegations are insufficient to state a claim upon which relief may be granted against these Defendants, and Defendants' motion to have them dismissed from this case should be granted.

III.   **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss Amended Complaint [Document # 31], which has been treated as a motion for summary judgment,  be granted in part and denied in part, as follows:

1.   Defendants Hays, Morley, and Marzullo should be dismissed from this case, due to Plaintiff's lack of intent to include them as defendants in this case;

2.   Defendants Mark, Varner, Barone, S. Dombrowski, Toski, Grunland, and Overmyer should be dismissed from this case, due to their lack of personal involvement in any of the challenged actions;

3.   Defendants should be granted summary judgment with regard to:

   a.   Plaintiff's retaliation claim concerning his placement in administrative custody;

   b.   Plaintiff's denial of access to the courts claim;

   c.   Plaintiff's equal protection claim regarding his placement in administrative custody.

   d.   Plaintiff's equal protection claim regarding the rejection of his non-legal correspondence, against Defendant Woodard; and

   e.   Plaintiff's equal protection claim regarding the alleged denial of access to the law library, against Defendants Gill, Nicholson, Ireland, and Banta.

4.   Defendants should be denied summary judgment with regard to all other claims raised by Plaintiff, and such claims should be allowed to proceed.  Specifically, the following claims should remain against the parties indicated:

   a.   Plaintiff's retaliation claim regarding the rejection of his non-legal correspondence, against Defendant Woodard;

   b..   Plaintiff's retaliation claim regarding the denial of access to the law library, against Defendants Gill, Nicholson, Ireland, and Banta; and

   c.   Plaintiff's retaliation claim regarding the alleged false misconduct issued by Defendant Ireland, against Defendants Ireland, Gill, and Banta;

It is further recommended that, as a result of the recommended dismissal of Plaintiff's retaliation claim regarding his placement in administrative custody, the following Defendants

should be dismissed from this case:  Ennis, Wojcik, Reed, B. Dombrowski, Bensel, Nevling,

Repko, and Ford.

      In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days

from the date of service to file written objections to this report.  Any party opposing the

objections shall have ten (10) days from the date of service of objections to respond thereto.

Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v.

Frank, 488 F.3d 187 (3d Cir. 2007).




                                    /s/ Susan Paradise Baxter
                                    SUSAN PARADISE BAXTER
                                    United States Magistrate Judge

Dated: November 30, 2009

cc:      The Honorable Sean J. McLaughlin
           United States District Judge