IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAY JIBRIL MURRAY, )
    Plaintiff ) C.A. No. 08-264 Erie
 )
    v. ) District Judge McLaughlin
 ) Magistrate Judge Baxter
PAUL A. ENNIS, et al., )
    Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that:

1. Defendants' Motion for Summary Judgment [ECF No. 66] be granted; and

2. Plaintiff's Motion for Summary Judgment [ECF No. 70] be denied.

**II.   REPORT**

   **A.   Procedural History**

On or about September 2, 2008, Plaintiff Bray Jibril Murray, an individual formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Named as Defendants in Plaintiff's original complaint are: Paul Ennis, Program Manager at SCI-Forest ("Ennis"); Michael C. Barone, Superintendent at SCI-Forest ("Barone"); Edward J. Wojcik, Deputy Superintendent at SCI-Forest ("Wojcik"); and Major James A. Reed, a corrections officer at SCI-Forest ("Reed"). Plaintiff subsequently filed an amended complaint on March 16, 2009, in

---

[1] Plaintiff is presently incarcerated at SCI-Somerset, Pennsylvania.

which he added the following Defendants, all of whom are also employed at SCI-Forest: Lieutenant Bensel ("Bensel"); Cindy Hays, Activity Manager ("Hays"); Ben Marzullo, Activity Manager ("Marzullo"); Activity Specialist Ford ("Ford")' Specialist Morley ("Morley"); Lieutenant M.L. Nevling ("Nevling"); Captain Ireland ("Ireland"); Lieutenant W. Gill ("Gill"); Sergeant Nicholson ("Nicholson"); Mail Supervisor D.A. Woodard ("Woodard"); Bill C. Dombrowski, Unit Manager ("B. Dombrowski"); Sharon M. Dombrowski, School Principal ("S. Dombrowski"); Kurt L. Granlund, Deputy Superintendent ("Granlund"); Paula Toski, Inmate Accountant ("Toski"); Laura Banta, Hearing Examiner ("Banta"); Timothy I. Mark, Chief Hearing Examiner ("Mark"); Dorina Varner, Chief Grievance Coordinator ("Varner"); Major M.D. Overmyer ("Overmyer"); and Captain M.C. Repko ("Repko").

Plaintiff has alleged that Defendants retaliated against him for filing grievances, in violation of his First Amendment rights, and violated his Fourteenth Amendment equal protection rights, by: (i) placing him in SCI-Forest's restricted housing unit ("RHU") under administrative custody status; (ii) rejecting and returning to sender non-legal correspondence sent to him by friends, without notifying him and giving him an opportunity to protest; (iii) denying him law library; and (iv) finding him guilty of an allegedly false misconduct. (ECF No. 27, Amended Complaint, at pp. 2-4). In addition, Plaintiff has claimed that denying him access to the law library violated his constitutional right to access the courts. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and monetary damages.

On May 21, 2009, Defendants filed a motion to dismiss amended complaint [ECF No. 31]. Attached to Defendants' motion were a number of exhibits consisting primarily of Plaintiff's grievance and misconduct records, upon which Defendants relied in seeking dismissal of Plaintiff's claims. [ECF No. 31, Exhibits A-M]. Plaintiff filed a brief in opposition to Defendants' motion to dismiss, responding fully to Defendants' arguments and the documents attached to Defendants' motion. [ECF No. 37]. As a result, Defendants' motion to dismiss was

treated by this Court as a motion for summary judgment pursuant to Fed.R.Civ.P. Rule 12(d).[2]

On November 30, 2009, this Court issued a Report and Recommendation ("R&R"), recommending that Defendants' motion be granted in part and denied in part. [ECF No. 38] After Plaintiff filed objections to the R&R, District Judge Sean J. McLaughlin entered a Memorandum Order on February 5, 2010, adopting, in part, this Court's recommendations as follows: (i) Defendants Hays, Morley, and Marzulla were dismissed from this case due to Plaintiff's lack of intent to include them as Defendants; (ii) Defendants Marks, Varner, Barone, S. Dombrowski, Toski, Grunland, and Overmyer were dismissed from this case due to their lack of personal involvement in any of the challenged actions; (iii) summary judgment was granted in favor of Defendants with regard to Plaintiff's equal protection and denial of access to courts claims; and (iv) summary judgment was denied Defendants with regard to Plaintiff's retaliation claims. [ECF No. 45]. In response to Plaintiff's unopposed Rule 60(b) motion [ECF No. 55], District Judge McLaughlin subsequently entered an Amended Memorandum Order, dated July 8, 2010, reinstating Barone as a Defendant in this case with regard to Plaintiff's retaliation claim concerning his placement in administrative custody. [ECF No. 59].

The parties have since completed discovery, and Defendants have now filed a motion for summary judgment on Plaintiff's remaining retaliation claims [ECF No. 66], which consist of the following: (1) a retaliation claim against Defendants Ennis, Wojcik, Reed, Barone, B. Dombrowski, Bensel, Nevling, Repko, and Ford, regarding Plaintiff's placement in administrative custody ("AC"); (2) a retaliation claim against Defendant Woodard regarding the rejection of Plaintiff's non-legal correspondence; (3) a retaliation claim against Defendants Gill, Nicholson, Ireland, and Banta, regarding the denial of access to the law library; and (4) a

---

[2] Fed.R.Civ.P. Rule 12(d) provides that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

retaliation claim against Defendants Ireland, Gill, and Banta, regarding the issuance of an allegedly false misconduct against Plaintiff. Plaintiff has filed a response and brief in opposition to Defendants' motion [ECF Nos. 76 and 79], and has also filed his own motion for summary judgment [ECF No. 70], to which Defendants have filed an opposition brief. [ECF No. 82]. This matter is now ripe for consideration.

### B. Relevant Factual History

In June 2008, Plaintiff filed four grievances against one or more members of SCI-Forest's Activity Department: (i) Grievance No. 232487, claiming that Defendant Ford removed his name from the call out list for an inmate chess league tournament on June 10, 2008 (ECF No. 69-3 at p. 11); (ii) Grievance No. 232515, claiming that Activity Department staff members were blackballing him from becoming a member of a newly-formed Inmate General Welfare Fund Committee (ECF No. 69-3 at p. 27); (iii) Grievance No. 232923, claiming that Defendant Ford failed to place him on call out for an advanced cardio program on June 13 and June 17, 2008 (ECF No, 69-3 at p. 19); and (iv) Grievance # 232513, claiming that Defendant Morley was denying him access to a forty and over exercise program (ECF No. 69-3 at p. 25).

Defendant Ennis was assigned to respond to three of the four grievances and denied each. In particular, with regard to Grievance Nos. 232487 and 232923, Defendant Ennis responded that Plaintiff's name was, in fact, found on the call-out lists for both the chess league tournament on June 10, 2008, and the advanced cardio program on June 13, 2008, and that it was Plaintiff, rather than Defendant Ford, who acted in an aggressive manner. (ECF No. 69-3 at pp. 13 and 20). As a result, Defendant Ennis noted in response to Grievance No. 232923 that "inmate Murray is advised that false allegations against a staff member of any type are taken seriously and will be dealt with accordingly, if they continue." (ECF No. 69-3 at p. 20).

Two days later, on June 28, 2008, Corrections Activities Manager Marzullo observed Plaintiff playing basketball while wearing a blue knee sleeve. After contacting the medical

4

department and learning that there was no record of a knee sleeve having been issued for Plaintiff, Marzullo told Plaintiff to remove the sleeve, at which time Plaintiff became argumentative. Marzullo then confiscated the knee sleeve and wrote a misconduct charging Plaintiff with, *inter alia*, possession of contraband and lying to an employee. (ECF No. 69-4 at ¶ 28). The next day, Plaintiff reportedly had a verbal confrontation with Defendant Bensel in the medical area, of which Defendant Ennis was informed by Defendant Nevling on June 30, 2008. (Id. at ¶ 29).

After being told of Plaintiff's most recent confrontation with Defendant Bensel, Defendant Ennis consulted with Defendants Wojcik and Barone, as well as former Defendant Grunland, and "a joint decision was made to place [Plaintiff] in AC for his own safety and well being, in order to avoid what appeared to be escalating aggressive behavior." (ECF No. 69-3 at p. 50, ¶ 4; ECF No. 69-5 at p. 5, ¶ 5). Accordingly, on June 30, 2008, Defendant Repko was ordered to place Plaintiff in the RHU on administrative custody, because he was considered a danger to himself and others. (ECF No. 69-5 at p. 22, ¶ 1; ECF No. 5, Complaint, Exhibit C-3). The decision to place Plaintiff in the RHU was upheld on July 3, 2008, by the Program Review Committee ("PRC"), which consisted of Defendants Ennis, Wojcik, and Reed, who found that Plaintiff had been exhibiting "aggressive behavior" toward staff members. (ECF No. 69-3 at p. 45). As a result, Plaintiff was continued on administrative custody. (Id.). On appeal, Defendant Barone affirmed the PRC's decision and warned Plaintiff that "should you choose to continue your argumentative behavior with staff, you will remain in the RHU on a long term basis." (ECF No. 69-3 at p. 42). Plaintiff refused to attend his next PRC review on September 25, 2008, and was continued on AC status. (ECF No. 69-3 at p. 41).

On October 18, 2008, Plaintiff filed Grievance No. 247199 against Defendant Woodard and SCI-Forest's mail room staff, charging mail tampering, unlawful monitoring of mail, and denial of correspondence privileges, because his non-legal correspondence from friends and family had been rejected and returned to sender without his knowledge. (ECF No. 69-1 at pp. 8-

5

9). In particular, Plaintiff stated that his sister informed him that SCI-Forest's mail room returned letters from three female friends because they were considered third party mail. (Id.). Plaintiff claimed that DOC policy required him to be notified of the rejection and the mail be held for at least seven business days to allow him to protest. (Id.). Former Defendant Toski wrote an initial response denying the grievance, indicating that "DOC policy does not permit third party correspondence," and "does not state the inmate must be advised of mail that is returned to sender." (ECF No. 69-1 at p. 6). Plaintiff's appeal of Toski's initial response was denied by Defendant Barone. On final review, former Defendant Varner upheld Plaintiff's appeal and overturned the responses provided at the institutional level, agreeing that Plaintiff should have been notified of the rejection of correspondence, and the correspondence should have been held for at least seven working days pending appeal. Nevertheless, Varner found that Plaintiff had failed to provide any proof that staff had deliberately tampered with his mail or that he had been harmed in any way by the staff's "mistake in not notifying [him] of the violation." Thus, Plaintiff was refused the relief he requested. (ECF No. 69-1 at p. 2).

On October 19, 2008, Plaintiff filed Grievance No. 247200 against Defendants Nicholson and Gill, claiming that they had denied him the use of the law library since October 4, 2008, in retaliation for his filing of an earlier grievance. (ECF No. 69-6 at p. 43). Defendant Ireland investigated the grievance and wrote an inmate review response recounting his finding that Plaintiff had, in fact, used the law library on October 4, October 6, October 8, and October 18, 2008, for at least two hours each time. (ECF No. 69-6 at p. 42). As a result of this finding, Defendant Ireland issued a misconduct against Plaintiff for lying to an employee. (ECF No. 69-7 at p. 11). Defendant Banta found Plaintiff guilty of the misconduct and sanctioned him to ninety days of disciplinary custody. (ECF No. 69-7 at pp. 18-19). Plaintiff's subsequent appeals of this finding were denied.

### C. Standards of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."

7

Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.

8

1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**D.   Discussion**

**1.   Retaliation**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

> In order to state a prima facie case of retaliation, a prisoner must demonstrate:
> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[3]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[4]

---

[3] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[4] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions.  "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case."  Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that one or more of the Defendants retaliated against him for utilizing the inmate grievance process by: (i) placing him in the RHU under administrative custody; (ii) rejecting and returning to sender non-legal correspondence sent to him by friends, without notifying him and giving him an opportunity to protest; (iii) denying him access to the law library; and (iv) finding him guilty of an allegedly false misconduct and sanctioning him to disciplinary custody.

### a. Constitutionally Protected Activity

Plaintiff has met the first prong of a retaliation claim, as the filing of grievances and lawsuits are clearly protected forms of free speech under the First Amendment.

### b. Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action. This means that Plaintiff's allegations must be sufficient to

demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity.

For purposes of their summary judgment motion, Defendants have assumed that Plaintiff has sufficiently demonstrated adverse action with regard to all of his retaliation claims other than his claim that Defendants Gill and Nicholson prevented him from using the law library. (See, e.g., ECF No. 67, Defendants' Brief, at p. 6). Thus, the Court is left to examine whether Plaintiff has demonstrated an adverse action only with regard to his law library claim.

With regard to such claim, Defendants argue that the record does not support Plaintiff's assertion that he was prevented from using the law library after October 4, 2008. In support of this argument, Defendants point to the RHU law library log that was produced by Defendant Ireland at Plaintiff's misconduct hearing of October 28, 2008.[5] (ECF No. 69-7 at pp. 13-15). The hearing examiner found this log sufficient to show that Plaintiff actually used the law library on October 4, October 6, October 8, and October 18, 2008. (ECF No. 69-7 at pp. 18-19). However, this Court found previously that the entries in the law library log, standing alone, are inconclusive, because a genuine issue of material fact exists as to the log's accuracy, a charge made by Plaintiff by way of affidavit in the previous briefing. (See ECF No. 38, R&R, at p. 14).

Defendants' have now supplemented the record in this case to include copies of Plaintiff's DC-17X adjustment records from the relevant time period at issue,[6] as well as the supporting Declaration of Defendant Gill. (ECF No. 69-8 at pp. 10-19 and pp. 32-33, respectively). These records disclose that the box next to "law library" was checked on

---

[5] This hearing was held with regard to the misconduct Plaintiff was issued by Defendant Ireland for lying to an employee, which is the subject of Plaintiff's separate retaliation claim against Defendants Ireland, Gill, and Banta.

[6] The adjustment records are used to document the activities and behavior of security level 5 inmates, such as Plaintiff, while they are confined in segregated housing units.

11

Plaintiff's DC-17X's on October 6 and October 8, 2008, thus corroborating the entries on the law library log on those two dates. (ECF No. 69-8 at p. 14 and p. 32, ¶ 2).[7] Moreover, while the DC-17X's fail to corroborate that Plaintiff attended law library on October 4 and October 18, 2008, they do reflect that he was **offered** law library use on two other occasions during the relevant time frame – October 5, 2008, and October 13, 2008; yet, he failed to attend on those dates.[8] (ECF No. 69-8 at p. 33, ¶ 4).

The additional corroborative evidence verifying that Plaintiff attended law library on October 6 and October 8, 2008, as well as the undisputed evidence that Plaintiff was offered the chance, but failed to attend the law library on October 5 and October 13, 2008, belie Plaintiff's claim that Defendants Gill and Nicholson prevented him from attending the law library after October 4, 2008. The only evidence Plaintiff has offered in response is his own Declaration, in which he simply states that he "never was allowed access to mini law library from 10/4/08 to 10/19/08...." (ECF No. 77 at p. 2, ¶ 14). Such a bald assertion is not sufficient to overcome the substantial weight of record evidence indicating otherwise: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Tindell v. Beard, 351 Fed.Appx. 591, 595 (3d Cir. 2009). Consequently, Plaintiff has failed to meet his

---

[7] Plaintiff disputes the legitimacy of these records because the inmate number written next to Plaintiff's on all but one of the DC-17X's is "CG-8458," rather than Plaintiff's correct inmate number, "CG-8958." However, given the similarity in appearance between a "4" and a "9," this was clearly a clerical error. Nonetheless, out of an abundance of caution, this Court ran a computerized search of inmate numbers and found that no inmate had the number "CG-8458" at SCI-Forest during the relevant time period at issue.

[8] In particular, Plaintiff's DC-17X's reflect that on October 5, 2008, Plaintiff demanded to be returned to his cell and threatened to urinate in the law library, while on October 13, 2008, Plaintiff refused a strip search that is required before law library use. (ECF No. 69-8 at p. 33, ¶ 4). These facts have not been disputed by Plaintiff.

burden of demonstrating that he suffered the adverse action of which he complains and has, thus failed to state a *prima facie* case of retaliation against Defendants Gill and Nicholson. Summary judgment should be entered in favor of said Defendants and denied Plaintiff, accordingly.

### c. Causal Connection

To satisfy the third prong of his retaliation claim, Plaintiff must allege a causal connection between his constitutionally protected activity of filing grievances and/or the instant lawsuit, and the adverse actions he allegedly suffered at the hands of the Defendants. For purposes of their motion for summary judgment, Defendants have essentially conceded that Plaintiff has met his burden of causation with regard to the retaliation claims concerning his AC placement and the allegedly false misconduct issued by Defendant Ireland. However, with regard to Plaintiff's retaliation claim against Defendant Woodard, Defendants argue that "there is no evidence that any alleged protected activity was a substantial motivating factor in Woodard's decisions to return [Plaintiff's] third-party mail without notice." (ECF No. 67, Defendants' Brief, at p. 6).

In his amended complaint, Plaintiff claims that "immediately following [his] 6-30-0[8] administrative custody confinement," Defendant Woodard rejected and returned non-legal mail sent to him by three female friends, without notifying him and giving him an opportunity to protest. (ECF No. 27, Amended Complaint, at pp. 3, 5). In his opposition brief, Plaintiff clarifies his allegations by specifically asserting that Defendant Woodard's rejection of his mail occurred in retaliation for Plaintiff's filing of the instant lawsuit. (ECF No. 79 at pp. 5-8). Plaintiff further clarifies that the rejection of his mail allegedly occurred between September 23, 2008 and October 9, 2008. (Id. at p. 6).

In response, Defendants note that the instant lawsuit was filed with this Court on September 22, 2008, and was not served upon the original Defendants until November 6, 2008. Thus, according to Defendants, the earliest date on which Defendant Woodard may have

13

become aware of the instant lawsuit is November 6, 2008.[9] As a result, Defendants conclude that Defendant Woodard could not have rejected Plaintiff's third party mail in retaliation for his filing of the instant lawsuit, because the record indicates she was not even aware of this lawsuit at the time she took the challenged actions.

In his opposition brief, Plaintiff attempts to cast doubt on the foregoing conclusion by asserting that Defendant Woodard would have been aware of the instant lawsuit on September 23, 2008, because she would have been assigned to investigate and respond to two grievances Plaintiff filed on that date. In particular, Plaintiff notes that the second of these two grievances, # 244541, expresses his concern that the instant lawsuit was not properly mailed. (ECF No. 80 at p. 15). Based on the reference to this lawsuit in that second grievance, Plaintiff claims that Defendant Woodard must have become aware of the instant lawsuit on or about September 23, 2008 (the date of the grievance). This claim, however, is speculative at best.

---

[9] Although it is worth noting that Defendant Woodard was not even included among the original Defendants and was not joined in this action until months later, when Plaintiff filed his amended complaint on or about March 4, 2009.

Plaintiff simply assumes that Defendant Woodard was assigned to investigate and respond to his grievances of September 23, 2008; yet, there is no record evidence to support this assertion. In fact, the record reflects that Plaintiff withdrew both grievances on September 30, 2008, only five days after they were received by the grievance coordinator, and before any written response could be given. (ECF No. 69-2 at p. 23).[10] Moreover, the stated reason Plaintiff gave for withdrawing the grievances is that they had been "amiably and informally resolved." (ECF No. 69-2 at p 22). Thus, even assuming Defendant Woodward was assigned to investigate and respond to these grievances, the fact that they were resolved "amiably" evidences a conciliatory attitude, rather than a retaliatory one. Finally, in her responses to Plaintiff's written deposition questions directed to her in this case, Defendant Woodard has stated under oath that she "did not know about this lawsuit until [she] was made a party months later, in 2009." (ECF No. 69-1 at p. 13, ¶ 5). For all of the foregoing reasons, the Court finds that Plaintiff has failed to establish a causal connection between the filing of the instant lawsuit and Defendant Woodard's alleged retaliatory actions.

Nonetheless, even if Plaintiff could establish the requisite causal connection, it is clear from the record that there was no retaliatory animus exhibited by Defendant Woodard in returning Plaintiff's third party mail. In her Declaration, Defendant Woodard offers the following explanation for her actions:

> 5. DC ADM 803, Section 1A3g provides that inmates may not correspond with a prohibited party directed through a third party. If mailroom staff have probable cause to believe the inmate's incoming mail contains correspondence from an unauthorized source through a third party (such as incoming mail which contains different handwriting on two enclosures or the letter has different handwriting than the address on the envelope), then each letter is read briefly to determine if one was from an

---

[10] The fact that Plaintiff's grievances were not even received by the grievance coordinator until September 25, 2008, further belies Plaintiff's claim that Defendant Woodard began rejecting his mail on September 23, 2008, after allegedly becoming aware of the instant lawsuit.

15

> 6. unauthorized third party – such as another inmate.
>
> 6. At some point in the summer of 2008, [Plaintiff] had received several suspicious letters where the handwriting on the enclosed letters differed from the handwriting on the envelopes. Upon brief review of the letters sent to [Plaintiff], which I was permitted to do at that time as the Superintendent's designee under DC ADM 803, it was apparent that the letters were from other inmates and thus, prohibited.
>
> 7. Consistent with the standard operating procedures in the mailroom at that time, the letters were replaced in the envelopes and returned to the senders with a notation that third-party mail is prohibited.
>
> 8. As I explained in my response to [Plaintiff's] deposition questions, my understanding and interpretation of DOC policy at that time was that such mail was to be returned to the sender, and that while notice may be provided to the inmate, notice was not required in advance of returning the mail. The Chief Grievance Officer clarified that the policy actually requires notice to the inmate in such instances, as well as an opportunity to appeal. SCI-Forest immediately changed its procedures and is complying with that interpretation.
>
> 9. Prior to this time, the mailroom had returned third-party mail received by inmates other than [Plaintiff], also without giving the inmate notice. That was our standard procedure based on our understanding of the policy....

(ECF No. 69-1 at ¶¶ 5-9).

Plaintiff offers no evidence to the contrary to establish retaliatory animus, other than his bald assertion that "Plaintiff knows for a fact none of his correspondent mail in the summer and early fall of 2008 were third party, and that the rejection of his mail was in retaliation for grievances and lawsuits against SCI-Forest employees." (ECF No. 79, Plaintiff's opposition brief, at p. 7). This is insufficient to overcome Defendant Woodard's sworn declaration that she was simply following standard operating procedures in SCI-Forest's mailroom at the time she returned Plaintiff's mail.

Based on the foregoing, therefore, summary judgment should be entered in favor of Defendant Woodard, and denied Plaintiff, on Plaintiff's retaliation claim regarding the rejection of his third party mail.

16

#### d.      Legitimate Penological Interests Cited by Defendants

For purposes of their summary judgment motion, Defendants have not challenged Plaintiff's ability to establish a *prima facie* case of retaliation with regard to his claims that (i) Defendants Ennis, Barone, Wojcik, Reed, B. Dombrowski, Bensel, Nevling, Repko, and Ford placed him in AC in the RHU "for an indeterminate period of time in retaliation for filing grievances against SCI-Forest staff" (ECF No. 27, Amended Complaint, at p. 4); and (ii) the misconduct he received from Defendant Ireland for lying to an employee about the denial of his access to the law library was issued in retaliation for his filing of grievances against SCI-Forest staff. (Id. at p. 5). Thus, with regard to these claims, it is Defendants' burden to prove, by a preponderance of the evidence, "that they would have made the same decision[s] absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

##### i.      Administrative Custody Claim

Plaintiff claims that Defendants Ennis, Barone, Wojcik, Reed, B. Dombrowski, Bensel, Nevling, Repko, and Ford placed him in AC on June 30, 2008, in retaliation for filing four grievances against members of SCI-Forest's activities department earlier that month. (ECF No. 27, Amended Complaint at pp. 2, 4). Defendants counter that Plaintiff's grievance and misconduct records demonstrate that he was ultimately placed in the RHU on AC status due to reports of his aggressive behavior toward staff, which caused him to be considered a danger to himself or others. In particular, Defendants note the following incidents that preceded Plaintiff's placement in the RHU: (i) on June 10, 2008, Plaintiff confronted Defendant Ford and accused him of removing Plaintiff's name from the call out list for an inmate chess tournament, which behavior was found to be "aggressive in nature and inappropriate towards a staff member" (ECF

17

No. 69-3 at p. 13); (ii) on June 13, 2008, Plaintiff confronted Defendant Ford about being left off the call out list for an advanced cardio program, "acted in an aggressive manner," and "continued to argue when given an answer" (ECF No. 69-3 at p. 20); (iii) on June 28, 2008, Defendant Marzullo observed Plaintiff playing basketball wearing a blue knee sleeve that was not authorized by the medical department, and asked Plaintiff to remove the sleeve, at which point Plaintiff "became argumentative" (ECF No. 69-4 at ¶ 28); and (iv) on June 29, 2008, Plaintiff reportedly had a verbal confrontation with Defendant Bensel in the medical area, for which Defendant Nevling issued an "other report" indicating that Plaintiff was "a danger to himself or others at SCI-Forest." (Id. at ¶ 29). The latter incident caused Defendant Bensel's superior, Captain Anstead, to intervene and direct Plaintiff back to his unit. (ECF No. 69-5 at p. 2, ¶ 1).

Defendant Ennis testified in his written deposition that, in light of the foregoing incidents, he became concerned that "there appeared to be a developing pattern of aggression toward staff," and "[t]he incident with [Defendant] Bensel ... signaled to [him] that it was time to bring this pattern to the attention of the Superintendent and Deputies." (ECF No. 69-4 at p. 19, ¶ 11 (cont'd)). After doing so, a joint decision was made on June 30, 2008, to place Plaintiff in the RHU on AC.

At the PRC's initial review of Plaintiff's AC status on July 3, 2008, the PRC advised Plaintiff that "his behavior toward the officers [was] why he [was] in the RHU." (ECF No. 69-3 at p. 45). The PRC indicated further that "[s]everal staff members [were] reporting his aggressive behavior," and that he needed "to establish a period of positive behavior before being considered for general population again." (Id.). In denying Plaintiff's appeal from the PRC's determination, Defendant Barone added that Plaintiff's "past history of disruptive behavior dictates that you remain under close supervision in population." (Id. at p. 42). Defendant Barone also warned Plaintiff that "[s]hould you choose to continue your argumentative behavior with staff, you will remain in the RHU on a long term basis." (Id.). Thereafter, Plaintiff refused to

18

attend his next PRC review on September 25, 2008, and was continued on AC status. (Id. at p. 41).

Plaintiff attempts to counter the foregoing evidence by arguing that the record does not support the finding that he was aggressive toward any activity staff member. In other words, Plaintiff is essentially arguing that Defendants have failed to prove by a preponderance of evidence that he did, in fact, exhibit aggressive behavior that would justify placement in the RHU. However, in the context of rebutting Plaintiff's retaliation claim, Defendants are not required to prove that Plaintiff actually engaged in aggressive behavior; only that their decision to place him in RHU on AC was reasonably related to a legitimate penological interest – ie, prison security. Here, multiple reports of Plaintiff's aggressive and/or argumentative behavior provided Defendants with an independent and legitimate penological reason to place him in administrative custody. For this reason, summary judgment should be granted in favor of Defendants, and denied Plaintiff, with regard to Plaintiff's retaliation claim concerning his placement in administrative custody.

### ii.      False Misconduct Claim

Plaintiff claims that the misconduct he received for lying to an employee about the denial of his access to the law library after October 4, 2008, was issued in retaliation for his filing of grievances against SCI-Forest staff. (Amended Complaint at p. 5). The Court previously allowed this claim to survive summary judgment at the motion to dismiss stage because Defendants were unable to establish by a preponderance of evidence that the challenged misconduct was issued for reasons reasonably related to a legitimate penological interest. In particular, the Court determined that there existed a genuine issue of material fact as to the accuracy of the law library log book, which was the sole evidence cited by Defendants in support of the misconduct at issue. (See ECF No. 38 at p. 15). Since such time, however, Defendants have provided additional corroborative evidence to show that Plaintiff was allowed

19

and/or offered use of the law library on four occasions after October 4, 2008. (See supra at p. 11). This evidence confirms that the challenged misconduct Defendant Ireland filed against Plaintiff for lying to an employee had an independent basis and was reasonably related to the legitimate penological interest of maintaining order. As a result, summary judgment should be granted in favor of Defendants Ireland, Gill, and Banta, and denied Plaintiff, on Plaintiff's false misconduct retaliation claim.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that:
1. Defendants' Motion for Summary Judgment [ECF No. 66] be granted; and
2. Plaintiff's Motion for Summary Judgment [ECF No. 70] be denied.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 3, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge