IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BRAY JIBRIL MURRAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-264 Erie |
| PAUL A. ENNIS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

### I. PROCEDURAL AND FACTUAL BACKGROUND

This matter is before the Court upon a Motion for New Trial: Altering or Amending the Judgment (ECF No. 145) and an Amended Motion for New Trial (ECF No. 162) filed by Plaintiff Bray Jibril Murray ("Plaintiff") pursuant to Federal Rule of Civil Procedure 59(a).[1] We have jurisdiction pursuant to 28 U.S.C. § 1331.

By way of background, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on October 1, 2008, naming as defendants approximately twenty-three current and former employees at the State Correctional Institution at Forest, in Marienville, Pennsylvania ("SCI-Forest"). (ECF No. 5). An Amended Complaint was filed on March 16, 2009. (ECF No. 27). A Motion to Dismiss followed on May 21, 2009. (ECF No. 31). Pursuant to that motion, the Court dismissed Plaintiff's claims against ten of the defendants on February 5, 2010. (ECF No. 45). The remaining defendants - Laura Banta, Margaret

---

[1] As part of his motion, Plaintiff also requests that the Court award him the costs of litigation. However, such a request is properly made to the Clerk of Court accompanied by an itemized Bill of Costs rather than to the Court in the first instance.

Bensel, William Dombrowski, Paul Ennis, Chad Ford, William Gill, Steven Ireland, Mike Nevling, Shawn Nicholson, James Reed, Andrew Repko, Edward Wojcik, and Michael Barone - filed an Answer on February 12, 2010. (ECF No. 46).

In his Amended Complaint, Plaintiff alleged that the remaining Defendants violated his First Amendment rights by retaliating against him for utilizing the inmate grievance process on three occasions while he was incarcerated at SCI-Forest in 2008. Specifically, Plaintiff alleged that on June 30, 2008, Defendants Ennis, Barone, Wojcik, Reed, Bensel, Ford, Nevling, Dombrowski and Repko placed him in the Restrictive Housing Unit under Administrative Custody status because of several grievances he had filed against the Activities Department staff. Plaintiff further alleged that Defendants Ireland, Gill and Nicholson denied him access to the law library from October 4, 2008 through October 19, 2008 because of a grievance he had filed on September 23, 2008. He also asserted that Defendants Ireland, Gill, Nicholson and Banta issued him a false misconduct on October 25, 2008 and sanctioned him to disciplinary custody because of a grievance he filed on October 19, 2008, challenging the aforementioned denial of access to the law library between October 4, 2008 and October 19, 2008. In addition, Plaintiff contended that Defendants Ennis, Barone, Wojcik, Reed, Bensel, Ford, Nevling, Dombrowski and Repko participated in a conspiracy to place him in the Restrictive Housing Unit under Administrative Custody status, in violation of Plaintiff's First Amendment rights.

The case proceeded to trial on September 19, 2011 and concluded with a jury verdict on September 27, 2011. (ECF No. 143, at 1). The jury found in favor of twelve of the thirteen defendants with respect to all of Plaintiff's claims. They found against

2

Defendant Ennis only with respect to Plaintiff's claim that he was placed in Administrative Custody on June 30, 2008 in retaliation for having filed a grievance against staff members, awarding nominal damages of 1 dollar. (ECF No. 143, at 2).

On October 17, 2011, Plaintiff filed a motion for a new trial. (ECF No. 145). He filed an amended motion for a new trial on August 1, 2012. (ECF No. 162). The matter has been fully briefed. For the reasons that follow, Plaintiff's motions will be denied.

II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(a), a court has the discretion to grant a new trial when the grounds invoked indicate that a verdict was against the weight of the evidence, or another circumstance – such as the improper admission or exclusion of evidence, or the provision of an improper charge to the jury – made the trial unfair to the moving party. *Cipriani v. Lycoming County Hous. Auth.*, 177 F. Supp. 2d 303, 309 – 10 (M.D. Pa. 2001) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). To sustain a claim that a verdict was against the weight of the evidence, the record must show the jury's verdict to be a "miscarriage of justice" which "shocks our conscience." *Id.* (quoting *Williamson v. Consol. Rail Corp.*, 926 F. 2d 1344, 1353 (3rd Cir. 1991)). Errors alleged in the admission or exclusion of evidence, or provision of instructions to the jury, must be substantial errors. *Id.* (citing *Montgomery Ward*, 311 U.S. at 251).

It is incumbent upon a reviewing court "to uphold the jury's award if there exists a reasonable basis to do so." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F. 2d 277, 290 (3rd Cir. 1991) (citation omitted). "[T]he court does not have the prerogative to

'substitute its own judgment . . . for that of the jury . . . regardless of whether the trial judge agrees or disagrees with the jury's verdict.'" *Cipriani*, 177 F. Supp. 2d at 310 (quoting *New Market Inv. Corp. v. Fireman's Fund Ins. Co.*, 774 F. Supp. 909, 917 (E.D. Pa. 1991)).

As it pertains to Plaintiff's Motion for an Amended/Corrected Judgment under Federal Rule of Civil Procedure 59(a) and (e), "[t]he standard of review of a jury's damage award is similar to that employed in the determination of a motion for new trial." *Ruhlman v. Hankinson*, 461 F. Supp. 145, 150 (W.D. Pa. 1978). "[I]t should stand if there is ample evidence to support it or unless it shocks the conscience of the court." *Id.* "The court is not permitted to arbitrarily substitute its judgment for that of the jury." *Id.*

### III. DISCUSSION

#### A. Conspiracy to Retaliate

Plaintiff contends that the jury's conclusion that two or more Defendants did not conspire to violate his rights by retaliating against him was against the weight of the evidence. The jury was charged as follows with respect to Plaintiff's § 1983 conspiracy claim:

> I will now instruct you concerning the law relative to the Plaintiff's § 1983 conspiracy claim against Defendants Ennis, Barone, Wojcik, Reed, Bensel, Ford, Nevling, Dombrowski and Repko. Plaintiff alleges that Defendants Ennis, Barone, Wojcik, Reed, Bensel, Ford, Nevling, Dombrowski and Repko participated in a conspiracy to place him in the Restrictive Housing Unit under Administrative Custody status, in violation of Plaintiff's First Amendment rights. You will not consider this claim unless you found that two or more of those Defendants violated the Plaintiff's Constitutional rights by retaliating against him.

4

A civil rights conspiracy is an express or implied agreement between two or more persons to deprive the Plaintiff of his Constitutional rights. In order to prevail on this claim, you must find the following by a preponderance of the evidence: first, the existence of an express or implied agreement among the Defendants to deprive the Plaintiff of his Constitutional rights, and second, an actual deprivation of those rights resulting from the agreement.

To be liable as a conspirator, a Defendant must be a voluntary participant in the common venture, although he or she need not have agreed on the details of the plan or even know who the other conspirators are. It is enough if the person understands the general objectives of the plan, accepts them, and agrees, either explicitly or implicitly, to do his or her part to further them. To be a member of the conspiracy, the Defendant need not join at the beginning or know all the other members or the means by which its purpose was to be accomplished.

Because direct evidence of a conspiracy is usually impossible to obtain, absent the testimony of a co-conspirator, circumstantial evidence is the usual manner of proving a civil conspiracy. In deciding whether the charged conspiracy exists, you may consider the actions and statements of every one of the alleged participants. An agreement may be proved from all the circumstances and the words and conduct of all the alleged participants which are shown by the evidence.

In deciding whether a particular Defendant joined the conspiracy, you must base your decision only on what that Defendant did or said. In determining what that Defendant did or said, you may consider that Defendant's own words or acts. You may also consider the words or acts of other persons to decide what that Defendant did or said, and you may use them to help you understand what that Defendant did or said.

If you find from your consideration of all the evidence by a preponderance of the evidence that there was an agreement by two or more Defendants to place the Plaintiff in the Restrictive Housing Unit under Administrative Custody status in violation of Plaintiff's First Amendment rights, and that two or more Defendants agreed to do his or her part, either explicitly or implicitly, to facilitate the placement, then you should find the Defendant liable for conspiracy.

A conspirator is responsible for the Constitutional violation committed by his or her fellow conspirators if he or she was a member of the conspiracy when the Constitutional violation was committed in furtherance of and as a foreseeable consequence of the conspiracy.

5

(ECF No. 135, pp. 4-10). Here, based on the evidence presented, it was well within the province of the jury to conclude that no other Defendant conspired with Ennis to retaliate against the Plaintiff. Plaintiff argues that when he "questioned Barone, Wojcik and Reed on what steps they took to confirm information from Ennis was accurate, each testified they did not attempt to prove or disprove the information from Ennis [was accurate], for they took it on face value he was being truthful." (ECF. No. 146, p. 12). However, the jury was not compelled to conclude that the other Defendants were on notice that Ennis was violating Plaintiff's constitutional rights or acquiesced in the same.

Plaintiff also contends that the Defendants' claimed lack of recall supports his entitlement to a new trial because "when . . . evidence is needed to carry the burden of proof, a lack of recall or recollection is worth absolutely nothing." (ECF 146, p. 13). However, as correctly pointed out by the Defendants, it was Plaintiff, rather than the Defendants, who carried the burden of proof at trial. In sum, after careful review of the record, we find no basis to overturn the jury's verdict relative to conspiracy.

B. Punitive Damages

Plaintiff also contends that the jury's verdict against Defendant Ennis necessarily compelled the conclusion that punitive damages should have been awarded as well. The jury was instructed as follows as to the issue of punitive damages:

> In addition to nominal damages, you may consider awarding the Plaintiff punitive damages. A jury may award punitive damages to punish a Defendant, or to deter the Defendant and others like him from committing such conduct in the future. You may only award punitive damages if you find that a particular Defendant acted maliciously or wantonly in violating the Plaintiff's federally protected rights. In this case there are

multiple Defendants.  You must make a separate determination whether each Defendant acted maliciously or wantonly.

A violation is malicious if it was prompted by ill will or spite towards the Plaintiff.  A Defendant is malicious when he or she consciously desires to violate federal rights of which he or she is aware, or when he or she consciously desires to injure the Plaintiff in a manner he or she knows to be unlawful.  A conscious desire to perform the acts that caused the Plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that a Defendant had a conscious desire to violate rights or injure the Plaintiff unlawfully.  A violation is wanton if the person committing the violation recklessly or callously disregarded the Plaintiff's rights.

If you find it more likely than not that a particular Defendant acted maliciously or wantonly in violating the Plaintiff's federal rights, then you may award punitive damages against that Defendant.  However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.  But remember you cannot award punitive damages unless you have found that the Defendant in question acted maliciously or wantonly in violating the Plaintiff's federal rights.

If you have found that the Defendant in question acted maliciously or wantonly in violating the Plaintiff's federal rights, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a Defendant for a malicious or wanton violation of the Plaintiff's federal rights, or to deter the Defendant and others like the Defendant from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish the Defendant.  You should also consider whether actual damages standing alone are sufficient to deter or prevent a particular Defendant from again performing any wrongful acts he or she may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those a particular Defendant may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which a particular Defendant should be punished for his or her wrongful conduct toward the Plaintiff, and the degree to which an

> award of one sum or another will deter a particular Defendant or others from committing similar wrongful acts in the future.
>     In considering the purposes of punishment and deterrence, you should consider the nature of a particular Defendant's action. For example, you are entitled to consider whether a particular Defendant acted in a deliberately deceptive manner, and whether the Defendant engaged in repeated misconduct, or a single act. You should also consider the amount of harm actually caused by a particular Defendant's act, and the harm that could result if such acts are not deterred in the future.
>     Remember, the amount of punitive damages awarded, if any, must not be the result of passion or prejudice against a particular Defendant. The sole purpose of punitive damages is to punish allegedly outrageous conduct and to deter the Defendant and others from similar acts.

(ECF No. 135, pp. 10-12).

The jury was properly instructed that it could only award punitive damages if it found conduct that was malicious or wanton. Moreover, the jury was also properly instructed that, even if it did make such a finding, it retained the discretion not to award punitive damages. A finding that a defendant acted in a retaliatory fashion does not require the imposition of punitive damages. *See Brennan v. Norton*, 350 F.3d 399, 429 (3rd Cir. 2003) ("Indeed, a contrary conclusion would mean that any finding of retaliatory motive would automatically support punitive damages . . . [I]t is clear under the Court's holding in *Smith v. Wade* that punitive damages require more than the retaliatory motive itself."). Here, based on the evidence presented, the jury appropriately exercised its discretion in refusing to impose a punitive award.

### C. Evidentiary Rulings

The Plaintiff also bases his request for a new trial on a number of evidentiary rulings made by the Court. He primarily alleges that evidence of prior acts of

8

misconduct was improperly admitted through the testimony of Defendant Ennis. (ECF No. 146, at 6-9; ECF No. 161, at 3-14). He also objects to defense counsel's reference to his past record in her opening statement.

Federal Rule of Evidence 404(b)(2) provides that evidence of crimes, wrongs, or other acts "may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." At trial, a court must take into consideration two issues before admitting such evidence: (1) whether evidence of crimes, wrongs, or other acts is logically relevant to any issue other than propensity to act in conformity therewith, and (2) whether, if relevant, the probative value of this evidence outweighs its potential prejudicial effects. *U.S. v. Sampson*, 980 F. 2d 883, 886 (3rd Cir. 1992). "The trial court has 'considerable leeway' in both the Rule 404(b) relevancy determination and the balancing test under Rule 403." *Id.* (citations omitted). Rule 404(b) "is inclusive, not exclusive, and emphasizes admissibility." *U.S. v. DeMuro*, 677 F. 3d 550, 563 (3rd Cir. 2012) (quoting *Sampson*, 980 F. 2d at 886).

Plaintiff filed a number of Objections and Motions in Limine (ECF Nos. 109 – 15) seeking to exclude five pieces of evidence listed on the defense's proposed exhibit list (ECF No. 101 at 6 – 7). At a hearing held to address pretrial motions on August 31, 2011, the Court considered Plaintiff's objections and motions. (ECF No. 128). The Defendants responded that the documents were not being offered to assert the truth of the matters asserted therein, but to inferentially establish that retaliation was not the motive for the discipline received by Plaintiff. (ECF No. 128, at 21-25). The Court ruled that the evidence would be excluded if it was not known to the Defendants prior to making the disciplinary decisions. (ECF No. 128, at 22).

Contrary to the Plaintiff's contention, we find no error with respect to Ennis's testimony concerning Plaintiff's history of misconducts or defense counsel's allusion to the same. While testifying in response to questioning by defense counsel concerning his reasons for placing Plaintiff in restrictive housing, Ennis stated, "Mr. Murray has a history that we were aware of, of inciting others to act, [and] we weren't going to take a chance." (ECF No. 150 (Trial Transcript, Day 2) at 42). Plaintiff objected and was overruled. Ennis went on to state that this history was a motive behind the decision to take disciplinary action. (ECF No. 150 (Trial Transcript, Day 2) at 42).

Following questioning by defense counsel, Plaintiff asked Ennis: "When you say history, right, what history are you referring to?" (ECF No. 150 (Trial Transcript, Day 2) at 49). Defendant Ennis replied: "In 1999 you were transferred from SCI-Greene after you were found to be in possession of a 15-inch shank or a 7-inch shank…" (ECF No. 150 (Trial Transcript, Day 2) at 50). Plaintiff objected. At sidebar, the Court requested that defense counsel make some proffer of evidence to show that Defendant Ennis was aware of Plaintiff's history prior to disciplining Plaintiff. The Court ruled: "He's allowed to testify to what he reasonably believed occurred about prior misconducts that are relevant." (ECF No. 150 (Trial Transcript, Day 2), at 51).

Prior to closing argument, the Court gave a limiting instruction to the jury informing them that Plaintiff's misconduct history was not offered for the truth of the matter or to demonstrate that Plaintiff had acted in conformity therewith. Rather, we explained that it was offered for the limited purpose of proving a motivation other than retaliation. (ECF No. 153 (Trial Transcript, Day 5), at 6). In our charge to the jury, we admonished them again as follows:

10

> There has been testimony in the case that the plaintiff engaged in aggressive or inappropriate behavior at other institutions prior to coming to Forest. This testimony was not offered for its substantive truth. You may consider it, only if you choose, as evidence as to why the defendants took certain actions in this case. Similarly, there was testimony that the plaintiff engaged in aggressive or inappropriate behavior at Forest prior to June 20, 2008. If you credit that testimony, you may not consider those acts as evidence that he likely committed the acts at issue in this trial. You may, however, consider them, if you choose, as evidence relative to the defendants' motives in making the decisions they made.

(ECF No. 155 (Trial Transcript, Day 7), at 7-9).

In sum, in permitting the introduction of the aforementioned evidence for a limited purpose, we concluded then, as we do now, that its probative value outweighed any prejudicial effect.

### D. DC-17x Documents

Plaintiff next contends that documents styled "DC-17x documents" were untrustworthy and should not have been admitted under Federal Rule of Evidence 803(8)(C). (ECF 146, at 9). Those documents were used to record the activities of prisoners in restricted housing at SCI-Forest, including the use of the law library. As previously discussed, one of Plaintiff's retaliation claims was based on the contention that certain Defendants denied Plaintiff the use of the prison law library in retaliation for filing grievances against prison staff. The DC-17x documents were introduced by Defendants to lend evidentiary support to their contention that Plaintiff had, in fact, been given access to the library and, consequently, had not suffered an adverse action in that respect. Plaintiff contends that the documents were unreliable because they were missing his name and commitment number. However, when the original DC-17x

documents were admitted, it was apparent that they were two-sided, with the Plaintiff's identifying information on the back rather than the front. (Defendants' Trial Ex. U).

Federal Rule of Evidence 803(8)(C) allows for the admission of evidence which might otherwise be considered hearsay, because there is a general presumption of reliability of government records. *Coleman v. Home Depot, Inc.*, 306 F. 3d 1333, 1341 (3rd Cir. 2002). This presumption notwithstanding, evidence may still be excluded if "the sources of information or other circumstances indicate lack of trustworthiness." *Id.* at 1341 – 42 (citing FED. R. EVID. 803(8)(C)). Here, as explained above, Plaintiff's contention that his identifying information was not contained in the original documents is incorrect. Moreover, in response to questioning by Plaintiff, Defendant Nicholson explained that the DC-17x form for every inmate was stored in a folder which contained identifying information for that inmate. (ECF No. 151 (Trial Transcript, Day 3) at 4 – 11). Consequently, we find no merit to Plaintiff's objections relative to the utilization of the DC-17x records.

    E.    Jury Instructions

      1.  Retaliation

Plaintiff argues that a new trial is warranted based upon his contention that the Court failed to properly instruct the jury as to his retaliation claim concerning his access to the law library. In this regard, we charged the jury as follows:

> Plaintiff next claims that Defendants Ireland, Gill and Nicholson denied him access to the law library from October 4, 2008 through October 19, 2008 because he filed a grievance on September 23, 2008. With respect to this claim, it is undisputed that the Plaintiff engaged in protected conduct. Therefore, in terms of this claim, you will decide whether the Plaintiff was, in

fact, denied access to the law library from October 4, 2008 through October 19, 2008, and if so, whether the Plaintiff's protected conduct was a substantial or motivating factor in a Defendant's or Defendants' decision to take that adverse action.

If you decide that the Plaintiff was not denied access to the law library, then you must find for the Defendants on this claim. If you determine that the Plaintiff was denied access to the law library by one or more Defendants, then you must determine whether the Plaintiff has proven a causal link between the exercise of his constitutional rights and the adverse action taken against him. In showing that the Plaintiff's protected activity was a substantial or motivating factor for a particular Defendants' decision, the Plaintiff is not required to prove that his protected activity was the sole motivation or even the primary motivation for a particular Defendant's decision. Plaintiff need only prove that his protected activity played a motivating part in the Defendant's decision even though other factors may also have motivated the Defendant. Plaintiff could make this showing in a number of ways. The timing of events can be relevant, for example, if the Defendant's action followed very shortly after the Defendant became aware of the Plaintiff's protected activity, but timing alone is not dispositive. However, a more extended passage of time does not necessarily rule out a finding that the Plaintiff's protected activity was a motivating factor.

Finally, Plaintiff claims that Defendants Ireland, Gill, Nicholson and Banta issued him a false misconduct on October 25, 2008 and sanctioned him to disciplinary custody because he filed a grievance on October 19, 2008 claiming that he had been denied access to the law library from October 4, 2008 through October 19, 2008. You will only consider this claim if you conclude that one or more of the Defendants had denied the Plaintiff access to the law library. *If you so conclude, then you must determine whether each of these Defendants have proven by a preponderance of the evidence that he or she acted with the good faith belief that the Plaintiff's grievance of October 19, 2008 was false.*

(ECF No. 135, pp. 6-7).

Plaintiff claims that the italicized portion of the charge quoted above was misleading or inaccurate. We disagree. Simply put, the jury was never required to reach this issue because they concluded, as a factual matter, that Plaintiff had not been denied access to the law library. (ECF No. 143, p. 4). There was ample evidence to

13

support this conclusion. In any event, we find no error in the challenged portion of the instruction.

2. Deadlock

On September 26, 2011, at approximately 2:40 P.M., the jury advised the Court that it was having difficulty reaching a unanimous decision. (ECF No. 138). In response, the Court instructed the jury utilizing the model jury charge for a deadlocked jury contained at section 3.4 of the United States Court of Appeals for the Third Circuit's Model Civil Jury Instructions. Plaintiff contends that this instruction was coercive, racially charged, and misleading, and that it ultimately forced the jury to find against Plaintiff on most of his claims. (ECF No. 146 at 11 – 12; ECF No. 161 at 15 – 19).

Here, there is no merit to Plaintiff's contention that the wording of the instruction was coercive, racially charged, or misleading. The Court did not deviate from the language of the charge, and Plaintiff cites nothing to demonstrate any such deviation.

3. Response to Jury Question

Finally, Plaintiff takes issue with the Court's response to a jury question concerning the proper manner in which the jury should consider a witness's testimony that he or she lacks recollection as to a particular matter. (ECF No. 161 at 19). The question from the jury asked: "(1) can the lack of recall be used as a preponderance of evidence in the burden of proof; (2) is this similar to pleading the 5th; (3) how does the court require us to weight this evidence?" (ECF No. 139). The court responded:

> If there was testimony to lack of recall or statements as to lack of recall in documentation, by a witness, or exhibit, you may credit that testimony or you may reject it. That is, you may conclude that the witness in fact has no recollection of a particular matter, or you

14

> may conclude that despite a claimed lack of recollection, the witness does in fact recall . . . [I]t has absolutely nothing to do with the Fifth Amendment . . . This is a civil case. It has nothing to do with the Fifth Amendment.
>
> \* \* \* \* \* \* \* \*
>
> Remember what I told you, you are the sole judges of the credibility of the witnesses. Credibility means whether a witness is worthy of belief. You may believe everything a witness says, or only part of it, or none of it.
>
> \* \* \* \* \* \* \* \*
>
> Whatever inference you draw from a witness's claimed lack of recollection, you may factor that in with all the other reasonable inferences you have drawn in determining whether a party bearing the burden of proof has met that burden.

(ECF No. 155 (Trial Transcript, Day 7) at 7 – 9).

Having reviewed the Court's explanation, we find no error. Each of the jury's concerns was appropriately addressed.

### IV. CONCLUSION

Based upon the foregoing, the Court concludes that the arguments advanced by Plaintiff in support of his motions for new trial lack merit. Consequently, the motions are denied. An appropriate order follows.

s/ Sean J. McLaughlin<br>
SEAN J. McLAUGHLIN<br>
United States District Judge

cm: all parties of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAY JIBRIL MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-264 Erie |
| | ) | |
| PAUL A. ENNIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

AND NOW, this 11th day of September, 2012, for the reasons set forth herein,

IT IS HEREBY ORDERED that Plaintiff's Motion for New Trial: Altering or Amending the Judgment (ECF No. 145) and Amended Motion for New Trial (ECF No. 162) are DENIED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. _nk__